# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 12 C 50282 | DATE | 4/10/2013 |
| CASE TITLE | Fortney v. Stephenson County, et al. | | |

**DOCKET ENTRY TEXT:**

Defendants' motion to dismiss [18] is granted in part and denied in part.

■[ For further details see text below.]

Docketing to mail notices.

---

Plaintiff, Darnell Fortney, has sued defendants, Stephenson County and Stephenson County Board Members Linda Dotson, Chirstopher Clukey, Jerry Clay, and Salvatore Detente (collectively "the Individual Defendants"), on a number of civil rights and employment discrimination bases. Currently before the court is defendants' motion to dismiss or, in the alternative, for a more definite statement. For the reasons which follow, that motion is granted in part and denied in part.

## I. BACKGROUND

According to the complaint, which this court accepts as true for the purposes of a motion to dismiss, plaintiff is the nursing home administrator for the Stephenson County Nursing Center. Plaintiff has held this position since early 2008. Plaintiff alleges that his direct employer is Stephenson County itself. Of the five county administrators, plaintiff is the only black individual. Since becoming the nursing home administrator, plaintiff has led the nursing home from being nearly two million dollars in debt to Stephenson County to being debt free.

On November 10, 2010, plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge against the Individual Defendants, all of whom are members of the Stephenson County Board, for race-based discrimination. Since that time, plaintiff alleges that the Individual Defendants have harassed and retaliated against him for filing his charge. Specifically, Clukey allegedly called for plaintiff's dismissal after accusing him of killing a resident of the nursing home and mistreating patients, both of which plaintiff claims are baseless. Additionally, Clukey refused to meet with plaintiff to discuss any potential problems because of plaintiff's EEOC complaint. Detente allegedly began a county-wide investigation into plaintiff's use of his county-issued credit card, accusing plaintiff of having misappropriated county funds. Detente also allegedly "has been heard to say," although by whom and in what context is unclear, that he intended to "get that nigger if it takes every penny" he has. Moreover, defendants have allegedly collaborated to subvert the annual review process to prevent plaintiff from receiving a raise, called an "excessive" number of executive sessions recommending plaintiff's discharge, and made false statements to the media concerning plaintiff. Plaintiff alleges that none of these actions have been taken against the non-black county administrators.

On September 27, 2011, plaintiff filed a second EEOC charge claiming both racial discrimination and

retaliation for filing the original charge. Following his reception of an EEOC "right to sue letter," and based on the foregoing, plaintiff filed the instant complaint. In the complaint, in addition to the facts set out above, plaintiff alleges in Count I that the Individual Defendants violated 42 U.S.C. § 1981 by interfering with his employment contract through accusations that plaintiff used his county-issued vehicle for personal use, used county employees to perform work for himself unrelated to their employment, and by seeking plaintiff's termination all based on his race; in Count II that the Individual Defendants violated § 1981 by retaliating against him for complaining about their prior discrimination by failing to provide yearly evaluations and the related contingent salary increases; in Count III that Stephenson County violated Title VII, 42 U.S.C. § 2000e et seq., by discriminating against him due to his race in that it failed to provide him with his annual review and for failing to protect him from the behavior of the Individual Defendants; in Count IV that Stephenson County violated Title VII by retaliating against him for complaining about racial discrimination; in Count V that Stephenson County violated Title VII by creating a hostile work environment after he complained of race discrimination; and in Count VI that all defendants violated 42 U.S.C. § 1983 by depriving him of the equal protection of the law through interfering with his protected employment interests. Thereafter, defendants filed a joint motion to dismiss for failure to state a claim, seeking to dismiss all six counts, or in the alternative for a more definite statement.

## II. ANALYSIS

### A. Standard of Review

When deciding a defendant's motion to dismiss, a court accepts all of the well-pleaded allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Killingsworth v. HSBC Bank Nev., N.A., 507 F.3d 614, 618 (7th Cir. 2007). Under the Federal Rules, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." Id. at 679.

In dealing with a motion for a more definite statement, Rule 12(e) provides that any "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The purpose of Rule 12(e) is to provide defendants with an opportunity to dispel confusion and receive adequate notice of the plaintiff's claims so that an intelligible response can be filed. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002). Such motions are disfavored, however, as they often serve only to interject unnecessary delay into proceedings. See Lawler v. Peoria Sch. Dist. No. 150, No. 12-cv-1299, 2013 WL 552828, at *1 (C.D. Ill. Feb. 12, 2013).

### B. Counts I, III, & VI — § 1981, Title VII, & § 1983 Racial Discrimination

Defendants first argue that this court should dismiss Counts I, III, and VI of the complaint, which all allege disparate treatment racial discrimination. Courts typically apply the same framework in evaluating Title VII and § 1981 disparate treatment employment discrimination claims.[1] Vakharia v. Swedish Covenant Hosp., 190 F.3d 799, 806 (7th Cir. 1999). Likewise, the same approach is used for equal protection claims under § 1983 based on employment discrimination. See Williams v. Seniff, 324 F.3d 774, 788, 791 (7th Cir. 2003). "A claim of employment discrimination can be proved by showing direct or indirect evidence of discrimination." Id. Where, as here, plaintiff relies on indirect evidence[2] to establish a prima facie case of employment discrimination under Title VII, § 1981, or § 1983; he must plausibly allege that "(1) [he] was a member of a protected class; (2) [he] was meeting [defendant's] legitimate performance expectations; (3) [he] suffered an adverse employment action; and, (4) [defendant] treated similarly situated persons outside the protected class more favorably." Wood v. Motorola, Inc., No. 99-3171, 2000 WL 158491, at *2 (7th Cir. Feb. 9, 2000).

There is no question in this case that plaintiff is a member of a protected class—he is an African-

American. Defendants argue, however, that plaintiff has pled himself out of court in his complaint, exposing that he does not meet his employer's legitimate performance expectations. Specifically, defendants argue that plaintiff would not have been subject to excessive executive sessions recommending his termination unless he was terrible at his job. Similarly, defendants argue that plaintiff's allegations that Clukely accused plaintiff of being involved in the mistreatment of patients, and indeed caused the death of a patient, show that he is not meeting his employer's legitimate expectations. These arguments beg the question and are without merit. Part of the requirement to make out a claim of racial discrimination, as set out in greater detail below, is to show that plaintiff suffered an adverse action. Plaintiff claims that some of the adverse actions taken against him include regular false accusations and defendants bringing meritless executive sessions seeking his termination. According to defendants' argument, the actions plaintiff claims are adverse themselves should stand as proof that plaintiff was not meeting the legitimate expectations of his employer. One of the major contentions of any racial discrimination case is whether the adverse action—often the termination of employment—was motivated by racial animus or a legitimate purpose. The existence of the adverse action itself does not provide any evidence one way or the other. For instance, the fact that an individual was fired from his job is not evidence that he should have been fired from his job in a case based around race discrimination. Instead, in this case, plaintiff alleges that he managed the nursing center well and that he got its large debt rapidly under control and paid off. Accordingly, he claims, like the other managers, that he did a fine job and that he faced ridicule and discipline for no reason other than his race. Those allegations may not be true, but that is an issue for summary judgment or trial once a record has been established, not a motion to dismiss. See Twombly, 550 U.S. at 555.

Defendants also argue that plaintiff has not met the fourth requirement of a racial discrimination claim, that similarly situated employees were treated more favorably than himself. Specifically, defendants argue that

> Fortney alleges that as the only black administrator he was accused of improperly using his County credit card, blamed for the death of a nursing home resident and was the subject of numerous executive sessions at which his job performance was discussed. Fortney fails to identify any of his non-black counterparts who were also alleged to have misused their County credit card, blamed for the death of a resident and then not questioned about their conduct at a meeting or elsewhere. In fact, Fortney does not name any similarly situated employees at all.

(Pl. Br. 9.) Because plaintiff must show that the similarly situated individuals had engaged in similar conduct without being subject to discipline, defendants allege that the complaint fails to state a claim. See Humphries v. CBOCS W., Inc., 474 F.3d 387, 405 (7th Cir. 2007) ("[T]he similarly situated requirement normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." (emphasis and quotation marks omitted)). In making their argument, however, defendants once again misstate plaintiff's claim. Plaintiff claims that the various acts by defendants—including the allegations of improper credit card use, the calling of executive sessions, the failure to provide an annual review, etc.—were all based on fabrications from the Individual Defendants and were the acts of racial discrimination that the other county administrators, all white, did not face. Plaintiff outright denies having engaged in any of the conduct of which he was accused, so that he need only provide, at this stage, individuals who have engaged in similar conduct to that which he alleges he has engaged. He has done so—indicating that the other county administrators have similar responsibilities, are all white, and were not subject to fabricated charges and the other forms of harassment set out above.

The much more difficult question in this case arises from the third prong of the racial discrimination test—whether plaintiff faced an adverse employment action based on defendants' actions. As defendants correctly point out, the majority of defendants' actions of which plaintiff complains center around personality conflicts with the Individual Defendants and actions taken by those defendants which caused annoyance or inconvenience. Those acts are not sufficient, by themselves, to meet the adverse employment action threshold. See Porter v. City of Chi., 700 F.3d 944, 954 (7th Cir. 2012) ("[T]he [adverse] action must be more disruptive

than a mere inconvenience or an alteration of job responsibilities." (quotation marks omitted)). Indeed, "schedule changes and reprimands without material consequences" have generally been held to be insufficient to meet the adverse employment action threshold. Id. at 955. Instead, an adverse action, while still defined "quite broadly," "must materially alter the terms or conditions of employment to be actionable under the antidiscrimination provision of Title VII." Id. at 954 (quotation marks omitted). Here, although the majority of plaintiff's complaints are insufficient on their own to meet this threshold, plaintiff's complaint nevertheless states a cause of action. Plaintiff alleges that Stephenson County has failed to provide, and the Individual Defendants conspired to prevent Stephenson County from providing, plaintiff's annual review as guaranteed by his employment contract. One of the conditions of his employment was that plaintiff would receive an annual review and that annual review is the only means through which plaintiff may receive a raise. Where defendants have withheld the review he was contractually entitled to and provided the only path through which he could receive a pay increase, plaintiff has suffered a material alteration in the conditions of his employment. Accordingly, plaintiff has sufficiently alleged that he has suffered an adverse employment action.

In the end, then, plaintiff has sufficiently alleged a plausible claim for relief based on racial discrimination under Title VII, § 1981, and § 1983, and the portion of defendants' motion seeking to dismiss Counts I, III, and VI is denied.

### C. Counts II & IV — § 1981 and Title VII Retaliation

Defendants next argue that plaintiff's retaliation claims in Counts II and IV must be dismissed. In addition to forbidding direct racial discrimination, both Title VII and § 1981 forbid an individual from retaliating against another because he has previously complained about racial discrimination. See Brown v. Advocate S. Suburban Hosp., 700 F.3d 1101, 1106 (7th Cir. 2012). Again, the elements and methods of proof for the Title VII and § 1981 claims are "essentially identical," so there is no need to analyze them separately. Id. at 1104 n.1. Retaliation claims can be established under either the direct method of proof or the indirect method. Harper v. C.R. England, Inc., 687 F.3d 297, 306 (7th Cir. 2012). The complaint, and subsequent argument by the parties, do not make it clear under which method plaintiff seeks to proceed, so the court will treat it as though plaintiff is proceeding under both. That concern, however, is largely academic—plaintiff's complaint survives under either theory.

"To establish retaliation under the direct method, a plaintiff must present evidence, direct or circumstantial, showing that: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action; and (3) a causal connection exists between the two." Id. It is undisputed that plaintiff filed a previous EEOC charge complaining about racial discrimination, and that doing so qualifies as a protected activity. Likewise, plaintiff suffered a materially adverse action, as set out supra, where defendants have allegedly unilaterally changed the terms of his employment by failing to give him an annual review which could lead to a raise. The only question, then, is whether there are sufficient allegations in the complaint to plausibly link the fact that plaintiff filed an EEOC complaint to the adverse action. Plaintiff begins his argument by pointing out that each of the actions he complains about, including the failure to provide annual reviews, happened after he filed his EEOC complaint and have not happened to the other non-complaining administrators. However, "mere temporal proximity between the statutorily protected activity and the action alleged to have been taken in retaliation for that activity will rarely be sufficient" to show a causal connection. Id. at 308 (alterations and quotation marks omitted). Nevertheless, suspicious timing is one factor in considering a causal connection, and "together with other facts, can sometimes raise an inference of a causal connection." Magyar v. Saint Joseph Reg'l Med. Ctr., 544 F.3d 766, 772 (7th Cir. 2008). Plaintiff has sufficient additional facts to create such an inference. Specifically, plaintiff alleges that he attempted to speak with Clukely, one of the actors in the alleged conspiracy to violate his rights, concerning defendants' ongoing actions, but that Clukely would not speak to "someone who is actively suing the county" when the only "suit" was the EEOC charge. (Compl. at 4, ¶16.) Additionally, the complaint alleges that, following his EEOC charge, Detente indicated that he was going "to get that nigger if it takes every penny [he's] got." (Compl. at 5, ¶19.) Based on the foregoing allegations, coupled

with the allegations concerning the timing of defendants' actions, plaintiff plausibly alleges a retaliation claim utilizing the direct method of proof.

Similarly, plaintiff has sufficient allegations to proceed under the indirect method of proof for retaliation. Under that method of proof, plaintiff must show that "(1) he engaged in a statutorily protected activity; (2) he met his employer's legitimate expectations, i.e., he was performing his job satisfactorily; (3) he suffered a materially adverse action; and (4) he was treated less favorably than some similarly situated employee who did not engage in the statutorily protected activity." Harper, 687 F.3d at 309. As set out immediately above, plaintiff engaged in a protected activity and suffered a materially adverse action. He has also adequately alleged that he was meeting legitimate expectations and that he has been treated less favorably than the non-complaining administrators. See supra Section II.B.

Accordingly, because plaintiff has plausibly alleged claims for retaliation in Counts II and IV, the court denies that portion of defendants' motion seeking to dismiss those Counts.

### D. Count V — Title VII Hostile Work Environment

In their next argument, defendants request that this court dismiss Count V alleging hostile work environment under Title VII against Stephenson County for a variety of reasons. Plaintiff does not respond to any of these arguments, accordingly the court considers those arguments conceded and grants the motion to dismiss Count V. See Bonte v. U.S. Bank, N.A., 624 F.3d 461, 466-67 (7th Cir. 2010) ("Failure to respond to an argument—as the Bontes have done here—results in waiver. . . . [T]hey fail completely to respond to the specific arguments set forth in U.S. Bank's brief as to why their complaint fails to state a claim for relief. . . . Their failure to respond to U.S. Bank's arguments leads us also to conclude that they have waived any argument that the allegedly erroneous TILA disclosures are in fact 'material.' This leaves us no choice but to accept U.S. Bank's assertions—supported as they are by pertinent legal authority—that the allegations in the Bontes' complaint do not entitle them to relief." (citations omitted)).

Indeed, the court notes that there is an even more fundamental flaw with plaintiff's hostile work environment claim, namely that it is not included in either of his EEOC charges. The court may only review "those charges included in the EEOC charge, or reasonably related to the allegations of the charge and growing out of such allegations." Dandy v. United Parcel Serv., Inc., 388 F.3d 263, 270 (7th Cir. 2004) (alterations and quotation marks omitted). In plaintiff's September 27, 2011 EEOC complaint, which is the more recent and detailed of the two and forms the basis for the instant action, he stated:

> I was hired by [Stephenson County] on or about January 17, 2008. I am employed as a Nursing Home Administrator. During my employment, I filed a charge of discrimination against [Stephenson County] with the EEOC. Subsequently, I have been subjected to different terms and conditions of employment, including, but not limited to, denial of an annual review and a salary increase, whereas non-Black employees, and/or employees who have not filed EEOC charges, received annual reviews and salary increases.
>
> I believe that I have been discriminated against because of my race, Black, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

As is clear from the foregoing, plaintiff never mentions a claim for hostile work environment, nor sets out any allegations of the ongoing and pervasive harassment necessary to make out such a claim. Accordingly, the court is precluded from considering plaintiff's hostile work environment claim and that portion of defendants' motion seeking dismissal of Count V is granted. See Dandy, 388 F.3d at 270 ("In her third EEOC charge, Dandy alleged that she was denied promotions on account of her race and gender and that she was retaliated against for filing her previous EEOC charges. She makes no mention of unequal pay or a hostile work environment and therefore those claims are not properly before us.").

### E. Punitive Damages against Stephenson County

In their motion, defendants also seek to strike all of plaintiff's requests for punitive damages under Title VII or § 1983 against Stephenson County,[3] as defendant argues it is a government entity against whom punitive damages are unavailable. See 42 U.S.C. § 1981a(b)(1) (stating that punitive damages may not be recovered against a "government, government agency, or political subdivision"); City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) ("Because absolute immunity from such damages obtained at common law and was undisturbed by the 42d Congress, and because that immunity is compatible with both the purposes of § 1983 and general principles of public policy, we hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."). Plaintiff explicitly concedes this argument in his response. Accordingly, the court will grant defendants' motion to the extent it seeks to dismiss all requests for punitive damages against Stephenson County.

### F. Motion For a More Definite Statement

In their final request, defendants ask that this court enter an order requiring a more definite statement from plaintiff as to the allegations of his complaint. Specifically, defendants request additional clarity as to the years in which plaintiff claims he did not receive an annual review and what he means by a "unilateral" contract modification mentioned in the complaint as the document attached to the original complaint which purports to be a contract modification appears to be signed by both plaintiff and the County Board Chairman. Neither of these requests are grounds for a more definite statement. The defendants request the first in order to establish which claims fall within the terms of a purported settlement of the prior EEOC complaint, essentially attempting to force plaintiff to plead the facts necessary to establish the affirmative defense of accord and satisfaction. See Fed. R. Civ. P. 8(c)(1). However, plaintiff is under no obligation to plead facts which establish or rebut affirmative defenses. See Richards v. Mitcheff, 696 F.3d 635, 637-38 (7th Cir. 2012). Defendants should, instead, simply plead an affirmative defense for all acts up to whatever date they believe is covered by the settlement and then admit or deny any similar acts from then to the present. Similarly, the second request appears to be an attempt to get plaintiff to admit that his complaint is contradicted by his own exhibits. That, too, is an improper use of a Rule 12(e) motion for a more definite statement. The purpose of Rule 12(e) is to provide defendants with an opportunity to dispel confusion and receive adequate notice of the plaintiff's claims so that an intelligible response can be filed. See Swierkiewicz, 534 U.S. at 514. Here, defendants clearly believe that plaintiff's claims are barred or that the factual allegations are contradictory to the exhibits attached to the original complaint, but it is abundantly clear that defendants understand plaintiff's claims. The defendants' concerns are substantive and belong in their answer to the complaint, rather than as a basis for a motion for more definite statement.

### III. CONCLUSION

Defendants' motion is granted as to Count V and as to all of the requests for punitive damages against Stephenson County. It is denied in all other respects.

---

1. The court notes that, although this statement is true in general and the parties here treat Counts I and III as though they are governed by the same test, it is not apparent that Count I requires the same proof as Count III. Count I asserts an interference with contract theory rather than a typical employment discrimination theory. Although the Seventh Circuit has declined to determine whether contract claims should be subject to a test different from the normal Title VII test, see Stone v. Mid Ind. Serv. Co., 115 F. App'x 900, 902 (7th Cir. 2004), other circuit courts have devised modifications to the traditional Title VII test which accommodates § 1981 discrimination claims made against non-employer parties, like the Individual Defendants. See, e.g., Brown v. City of Oneonta, N.Y., 221 F.3d 329, 339 (2d Cir. 2000). In any event, because Count I survives the motion to dismiss under either test, and because the parties have not raised the point, the court will not decide today whether Count I should be subjected to a different test. Nevertheless, the parties may wish to brief the issue in connection with any future dispositive motions.

2. In his response to the motion to dismiss, plaintiff relies solely on the indirect method to show discrimination.

3. Defendants also request this court dismiss the punitive damage requests against Stephenson County based on plaintiff's § 1981 claims. However, Counts I and II, which are the only ones which purport to bring § 1981 claims, are not brought against Stephenson County, but against the Individual Defendants. To the extent that Stephenson County were required to indemnify the Individual Defendants for torts committed during the scope of their employment under the Illinois Government and Governmental Employees Tort Immunity Act, the county's duty to do so would not extend to punitive damages. See 745 ILCS 10/2-102.